# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XUAN HO,<br><br>    Petitioner,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>    Respondents. | Case No. 25-cv-02453-BAS-BLM<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR PRELIMINARY INJUNCTION (ECF No. 3); AND**<br><br>**(2) REQUESTING SUPPLEMENTAL BRIEFING FROM THE GOVERNMENT** |

Petitioner Xuan Ho filed a Petition for Writ of Habeas Corpus followed by an Application for a Temporary Restraining Order ("TRO") or Preliminary Injunction ("PI"). (ECF Nos. 1, 3.) Although the Court ordered a response to the TRO Application, the Government instead filed a Return to the Petition, and Petitioner filed a Traverse. (ECF Nos. 6, 9.)

On October 3, 2025, the Court held a hearing on Petitioner's Application for a TRO or PI. (ECF No. 7.) For the reasons below, the Court **GRANTS** Petitioner's request for a PI. (ECF No. 3.) The Court **ORDERS** Mr. Ho released pending removal to Vietnam and orders that he not be removed to a third country without notice to him and his counsel and

an opportunity for both to be heard. Finally, the Court **ORDERS** supplemental briefing on whether the Petition should be granted in its entirety.

## I. BACKGROUND

On January 17, 1984, Petitioner Xuan Ho came to the United States as an unaccompanied minor and was given lawful permanent resident status. (Declaration of Xuan Ho in Support of Petition ("Ho Decl.") ¶ 1, ECF No. 1, Ex. A.) In 1992, Ho was convicted of robbery, gun charges, and kidnapping. (*Id.* ¶ 2.) After serving his time in custody, he was ordered removed to Vietnam on February 28, 2018. (*Id.* ¶ 3; Declaration of Jason Cole in Support of Respondents' Response to TRO Application ("Cole Decl.") ¶ 4, ECF No. 6-1, Ex. A.)

However, "Vietnam has long refused to accept for deportation Vietnamese nationals who came to the United States as refugees before 1995." *Phong Thanh Nguyen v. Scott*, No. 2:25-cv-01398, ___ F. Supp. 3d ___, 2025 WL 2419288, at *6 (W.D. Wash. Aug. 21, 2025) (citing *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083 (C.D. Cal. 2020)). Therefore, in 2018, Immigration and Customs Enforcement ("ICE") detained Ho for over six months but was unable to remove him to Vietnam. (Ho Decl. ¶ 3.) Pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), ICE then released Ho under certain conditions. (*Id.* ¶¶ 3–4.) One of these conditions was that Ho report regularly to ICE. (*Id.* ¶ 4.)

For the past seven years, Ho has reported to ICE regularly and has not violated any conditions of his release. (Ho Decl. ¶ 4.) He obtained a work permit and worked two jobs: one during the day as a lab operator at a biochemical company and one at night at Target. (*Id.* ¶ 7.)

In 2020, the United States reached a Memorandum of Understanding ("MOU") with Vietnam, which created a process for returning pre-1995 Vietnamese immigrants, but the MOU limited such removals to persons meeting certain individualized criteria, some of which have been shielded from public view and have not been shown to this Court. *See Phong Thanh Nguyen*, 2025 WL 2419288, at *6. In a declaration submitted in support of Petitioner's TRO Application, an immigration attorney who specializes in representing

Vietnamese nationals explains, "the process is highly dependent on the individualized facts of the case, including whether the individual has any family remaining in Vietnam, whether their Vietnamese identity can be verified, [the individual's] criminal record[] and the manner in which [the individual] left Vietnam and came to the United States, among many other factors." (Declaration of Tin Tranh Nguyen in Support of TRO Application ("Nguyen Dec.") ¶ 7, ECF No. 3, Ex. A.)

Nevertheless, on July 3, 2025, ICE rearrested Mr. Ho and once again is holding him for removal to Vietnam. (Ho Decl. ¶¶ 5–6; Cole Decl. ¶ 5.) It has now been three months since Mr. Ho has been detained, and there is no immediate plan to remove him to Vietnam. According to the Government, ICE completed a request to travel on August 8, 2025. (Cole Decl. ¶ 8.) No copy of this travel request has been provided to the Court or to Mr. Ho. The travel request was allegedly forwarded to the attaché in Vietnam on September 15, 2025. (*Id.* ¶ 9.) According to the Government, "[t]he Vietnamese embassy has 30 days [from September 15, 2025] to issue the travel documents." (*Id.* ¶ 9.) The Government further claims that ICE has a flight scheduled to Vietnam on October 22, 2025. (*Id.* ¶ 13.) The Government claims that "as of the date of this declaration, ICE has been able to issue travel documents for 324 pre-1995 Vietnamese citizens, and currently has a 100% issuance rate." (*Id.* ¶ 11.) However, as of October 17, 2025, more than 30 days after the travel request was sent to Vietnam, no notice of travel documents has been provided to Petitioner. (ECF No. 10.) Nor has the Government provided an update to the Court.

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Generally, a plaintiff seeking a preliminary injunction must show: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest. *Id.* at 20. The Ninth Circuit has also applied a "'serious questions' test—a 'sliding scale' variant of the *Winter*

test." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (quoting *All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011)). Under the serious questions test, plaintiffs may still prevail on a PI if they can show that there are "'serious questions going to the merits'—a lesser showing than likelihood of success on the merits— . . . if the 'balance of hardships tips *sharply* in the plaintiff's favor.'" *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (emphasis in original) (quoting *All. for the Wild Rockies*, 632 F.3d at 1135). The party moving for the PI has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

## III.   ANALYSIS

Petitioner requests a PI on three grounds: (1) the Government failed to provide procedural due process in revoking his release; (2) the Court should prevent the Government from removing him to a country other than Vietnam without a hearing and opportunity to be heard; and (3) Petitioner's continued detention is unconstitutional due to the duration of his prior detention and the unlikelihood of his actual removal to Vietnam in the reasonably foreseeable future.

### A.   Jurisdiction

As an initial matter, the Court finds that it has jurisdiction to hear the underlying Petition for Writ of Habeas Corpus and the Application for a TRO or PI. The Government argues that Petitioner's claims are barred by 8 U.S.C. § 1252. (ECF No. 6, at 2–3.) Section 1252(g) grants the Attorney General the power to "commence proceedings, adjudicate cases, or execute removal orders" against noncitizens, and forbids judicial review of "any cause or claim by or on behalf of any [non-citizen] arising from" such decisions. 8 U.S.C. § 1252(g). In interpreting "arising from," the Supreme Court has cautioned against an "expansive interpretation" that would cause "staggering results" like rendering prolonged detention claims unreviewable. *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018); *see also Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482–83 (1999).

Here, Petitioner's claims challenge the constitutionality of his detention, not the core proceedings involved in his removal. The Government argues the Court does not have jurisdiction to hear these claims because they stem from the Attorney General's decision to execute a removal order against him. The Court finds this interpretation of § 1252(g) inconsistent with *Jennings v. Rodriguez* and the history of judicial review of the detention of noncitizens under 28 U.S.C. § 2241. *See also Zadvydas*, 533 U.S. at 699 (finding the duration of immigration detention reviewable under § 2241); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) (finding that the court has jurisdiction under § 2241 to consider errors of law in immigration detention, including due process violations); *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (finding that the court had jurisdiction to hear constitutional claims about immigration detention under § 2241 despite the Government characterizing the challenge as unreviewable). As other courts in this District have found in similar matters, the Court has jurisdiction to hear Petitioner's claims that his detention is unlawful under 28 U.S.C. § 2241 and to rule on this application for a PI. *See Alegria Palma v. LaRose*, No. 25-cv-1942-BJC-MMP, ECF No. 14 (S.D. Cal. Aug. 11, 2025); *Mendez Los Santos v. LaRose*, No. 25-cv-2216-TWR-MSB, ECF No. 14 (S.D. Cal. Sept. 4, 2025) (via Minute Order); *Rokhfirooz v. LaRose*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal. Sept. 15, 2025); *Tran v. Noem*, No. 25-cv-2334-JES-MSB, ECF No. 15 (S.D. Cal. Sept. 29, 2025).

### B. Likelihood of Success on the Merits

#### 1. Failure to Provide Due Process

ICE regulations provide that a non-citizen previously detained and released may be returned to custody "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [non-citizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). However, the regulations require that the non-citizen be notified of the reasons for revocation of his release and that there be "an initial informal interview promptly after his . . . return to Service custody to afford the [non-citizen] an opportunity to respond to the reasons for revocation stated in the

notification." *Id.* § 241.13(i)(3). "Government agencies are required to follow their own regulations." *Rokhfirooz*, 2025 WL 2646165, at *4 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003)). "Courts have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and petitioner's release must be ordered." *Id.* (citing cases). This Court reaches the same conclusion.

Mr. Ho says he was never notified of the reasons for revocation of his release and never received an informal interview affording him the opportunity to respond. (Ho Decl. ¶ 6.) At oral argument, the Government did not make any claims to the contrary. In fact, the Government's Return makes no argument about this first ground of the TRO Application at all. Given the lack of response, the Court finds Mr. Ho is likely to succeed on the merits of his claim that his re-detention failed to comply with due process.

    **2. Reasonable Likelihood of Removal in the Reasonably Foreseeable Future**

In *Zadvydas v. Davis*, the Supreme Court held that indefinite detention of a non-citizen in immigration custody raises "a serious constitutional problem." 533 U.S. at 690. Under the structure laid out in *Zadvydas*, it is "presumptively reasonable" to detain an individual following a removal order for six months. *Id.* at 701. After six months, *Zadvydas* "places the burden on the [non-citizen] to show . . . that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003) (quoting *Zadvydas*, 533 U.S. at 701). "If the noncitizen meets this burden, then ICE must 'introduce evidence to refute that assertion.'" *Phong Thanh Nguyen*, 2025 WL 2419288, at *13 (quoting *Pelich*, 329 F.3d at 1059).

Relying on *Zadvydas*, the Government in this case released Mr. Ho after over six months of detention, presumably agreeing that there was no significant likelihood of removal to Vietnam in the reasonably foreseeable future in 2018. The Government argues that circumstances have changed because Vietnam is now accepting Vietnamese

immigrants who immigrated before 1995, and that the Government has had a 100% success rate in achieving removal.

The Government further argues that Vietnam has 30 days to respond to its request for travel documents. Thus, a response was expected on October 15, 2025, and a flight to Vietnam is scheduled for October 22, 2025. However, as of October 17, 2025, Petitioner has received no notice of any travel documents being issued. If travel documents have, in fact, been issued, then Petitioner has failed to meet his burden on this prong. If no travel documents have, in fact, been issued, then Petitioner has met his burden, and the Court will grant the Petition. Hence, before ruling on the Petition and making the Court's injunctive relief permanent, the Court orders supplemental briefing on whether Vietnam has responded to the travel request and whether Mr. Ho is scheduled to be removed or deported to Vietnam.

### 3. Removal to a Third Country

Under ICE regulations, the Immigration Judge must give non-citizens an opportunity to designate a country to be removed to. 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). If that country will not accept the non-citizen, the Immigration Judge may designate a country of which the non-citizen is a subject, national, or citizen. 8 U.S.C. § 1231(b)(2)(D). If no country satisfies these requirements, the Immigration Judge must designate a country in which the non-citizen has a lesser connection. *Id.* § 1231(b)(2)(E)(i)–(vi). Finally, if removal under the above steps is "impracticable, inadvisable or impossible," the Immigration Judge must designate "another country whose government will accept the [non-citizen] into that country." *Id.* § 1231(b)(2)(E)(vii). Petitioner presents some evidence that at least two pre-1995 arrival Vietnamese immigrants have been deported to unrelated African third countries this year: one to Eswatini, the other to South Sudan. (Nguyen Decl. ¶¶ 6–7.)

However, "ICE may not remove a noncitizen to a country if the noncitizen's life or freedom would be threatened in that country because of the noncitizen's race, religion, nationality, membership in a particular social group, or political opinion." *See Aden v.*

*Nielsen*, 409 F. Supp. 3d 998, 1007 (W.D. Wash. 2019) (citing 8 U.S.C. § 1231(b)(3)). "If the noncitizen expresses fear of persecution or harm upon return to any of the countries designated by the [Immigration Judge], the [Immigration Judge] must inform the noncitizen that he or she may apply for asylum, withholding of removal, or relief under the Convention Against Torture." *Id.* (citing 8 C.F.R. § 1240.11(c)(1)). "'Failing to notify individuals who are subject to deportation that they have a right to apply . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process.'" *Id.* (quoting *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999)).

And yet, on July 9, 2025, ICE issued new guidance indicating it may remove any immigrant to a third country "without the need for further procedures" as long as the United States has received "credible" "assurances" from that country that deportees will not be persecuted or tortured. (Pet., Ex. B.) This procedure does not inform an individual subject to removal of his right to apply for withholding of deportation or of the opportunity to present any fear of persecution or harm upon return to the designated country. As such, this new guidance, if implemented without further procedures, would violate the immigrant's due process rights under *Andriasian*, 180 F.3d 1033.

The Government argues that it has no intention of removing Mr. Ho to an alternative country, so the issue is moot and not ripe for review. ICE's new guidance says otherwise. Hence, at the very least, Mr. Ho raises serious questions as to whether he will be deported to a third country other than Vietnam and that such deportation would violate his constitutional right to due process.

## C. Irreparable Harm

"It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). In this case, Mr. Ho establishes a strong likelihood of success on the merits, showing that his constitutional rights were violated in failing to provide due process to give him notice and an opportunity to respond after his re-detention.

In addition, his constitutional rights would be similarly violated if he were deported to a third country without notice and an opportunity to be heard. Finally, continued detention creates economic burdens on Mr. Ho and his family. *See id.* at 995. Hence, Mr. Ho has established that continued detention or removal to a third country without notice and an opportunity to be heard would create irreparable harm to him.

### D. Public Interest and Balance of the Equities

Failing to comply with due process in violation of the U.S. Constitution is against the public interest and supports the conclusion that the balance of equities favors a PI. *See Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("[P]ublic interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights.'" (alteration in original) (quoting *Melendres*, 695 F.3d at 1002)). Although the public does have an interest in promptly removing a criminally convicted non-citizen, *see Nken v. Holder*, 556 U.S. 418, 436 (2009), the balance of equities tips sharply in favor of issuing a PI on Mr. Ho's behalf because he was detained without due process. Any removal to a third country without notice and an opportunity to be heard would put Mr. Ho beyond the reach of the United States' jurisdiction, and any court order would be provided too late to benefit Mr. Ho. Therefore, the Court finds the public interest and balance of equities support granting the PI.[1]

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's Request for a Preliminary Injunction. (ECF No. 3.) The Government is **ORDERED** to release Mr. Xuan Ho, A027-295-888, on the same bond and conditions under which he was previously

---

[1] Under Rule 65(c), "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language," this rule grants the court discretion to determine "the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)); *see also Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) ("The district court is afforded wide discretion in setting the amount of the bond."). Here, the Court finds setting the bond at zero is appropriate because Mr. Ho is already subject to conditions of release, and he has no history of violating those conditions.

released.  The Government is further ordered not to remove Mr. Ho to any country other than Vietnam without notice and an opportunity to be heard.

The Government is ordered to file supplemental briefing no later than **November 3, 2025**, detailing whether travel documents have been received from Vietnam for Mr. Ho and whether he is scheduled to be removed.

**IT IS SO ORDERED.**

DATED: October 20, 2025

*[signature: Cynthia Bashant]*

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**